# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH ANN MARKEM,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:18-00441-N** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| ***Commissioner of Social Security,***[1] | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elizabeth Ann Markem brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), and widow's insurance benefits ("WIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*[2]  Upon consideration of

---

[1] Having been sworn in on June 17, 2019, Commissioner of Social Security Andrew M. Saul, as successor to Acting Commissioner Nancy A. Berryhill, is automatically substituted as the Defendant in this action under Federal Rule of Civil Procedure 25(d).  (*See* https://www.ssa.gov/agency/commissioner.html & https://blog.ssa.gov/social-security-welcomes-its-new-commissioner (last visited Mar. 23, 2020)).  This change does not affect the pendency of this action. See 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").  The Clerk of Court is **DIRECTED** to update the docket heading accordingly.

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).  Title II also provides that an unmarried "widow of a fully-insured individual is entitled to benefits upon attaining age 60[,]" *Gordon v. Bowen*, 801 F.2d 1275, 1276 (11th Cir. 1986) (citing 42 U.S.C. § 402(e)), or if the widow "is between 50 and 60 years old[]"

the parties' briefs (Docs. 13, 14, 18) and those portions of the administrative record (Doc. 11) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[3]

## I.    *Procedural Background*

Markem filed the subject applications for a period of disability, DIB, and WIB with the Social Security Administration ("SSA") on December 18, 2015.  After they were initially denied, Markem requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review.  A hearing was held on October 17, 2017; on March 2, 2018, the ALJ issued an unfavorable decision on Markem's applications, finding her not disabled under the Social Security Act and thus not entitled to benefits.  (*See* Doc. 11-2, PageID.62-86).

The Commissioner's decision on Markem's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's decision on September 26, 2018.  (*See* Doc. 11-2, PageID.51-55).  Markem subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision.  *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy,

---

and is disabled."  *Lewis v. Barnhart*, 285 F.3d 1329, 1331 (11th Cir. 2002) (per curiam) (citing 42 U.S.C. § 402(e)).

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73.  (*See* Docs. 22, 23).  With the Court's consent, the parties jointly waived the opportunity for oral argument.  (*See* Docs. 21, 24).

may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). In reviewing the Commissioner's factual findings, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

_____

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").[5]

---

[5] Nevertheless, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment)

Moreover, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the

---

(quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Additionally, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').").

Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB … requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E) … A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §[] 423(d)(1)(A)…

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[6] A widow between the ages of 50 and 60 is also required to show disability to qualify for WIB. *See* 42 U.S.C. § 402(e)(1)(B)(i).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

---

[6] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)).

"This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## III.     *Summary of the ALJ's Decision*

At Step One, relevant to the application for DIB, the ALJ determined that Markem met the applicable insured status requirements through January 1, 2019, and that she had not engaged in substantial gainful activity since the alleged disability onset date of May 30, 2014. Relevant to the application for WIB, the ALJ also found that Markem was "the not remarried widow of the deceased insured worker" who "ha[d] attained the age of 50" and "met the non-disability requirements" for WIB. The ALJ also determined that Markem's prescribed period

for WIB started April 2, 2017, and ended June 30, 2019.  (Doc. 11-2, PageID.67-68).[8]

At Step Two, the ALJ determined that Markem had the following severe impairments: obesity, and cervical spine degenerative joint disease.  (Doc. 11-2, PageID.68-75).  At Step Three, the ALJ found that Markem did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1.  (Doc. 11-2, PageID.75).

At Step Four,[9] the ALJ determined that Markem had the residual functional

---

[8] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 42 U.S.C. § 423(a)(1)(A) (2005)).  For WIB before age 60, a widow must demonstrate that she is

> under a disability … which began before the end of the period … beginning with whichever of the following is the latest:
>
> > (A) the month in which occurred the death of the fully insured individual referred to in paragraph (1) on whose wages and self-employment income her benefits are or would be based, or
> >
> > (B) the last month for which she was entitled to mother's insurance benefits on the basis of the wages and self-employment income of such individual, or
> >
> > (C) the month in which a previous entitlement to widow's insurance benefits on the basis of such wages and self-employment income terminated because her disability had ceased,
>
> and ending with the month before the month in which she attains age 60, or, if earlier, with the close of the eighty-fourth month following the month with which such period began.

42 U.S.C. §§ 402(e)(1)(B)(i), (4).

capacity (RFC) "to perform the full range of medium work as defined in 20 CFR

404.1567(c)."[10] (Doc. 11-2, PageID.75-84). Based on the RFC and the testimony of a

vocational expert,[11] the ALJ determined that Markem was able to perform past

---

[9] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity
> ("RFC"); and (2) the claimant's ability to return to her past relevant
> work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the
> regulations define RFC as that which an individual is still able to do
> despite the limitations caused by his or her impairments. 20 C.F.R. §
> 404.1545(a). Moreover, the ALJ will "assess and make a finding about
> [the claimant's] residual functional capacity based on all the relevant
> medical and other evidence" in the case. 20 C.F.R. § 404.1520(e).
> Furthermore, the RFC determination is used both to determine
> whether the claimant: (1) can return to her past relevant work under
> the fourth step; and (2) can adjust to other work under the fifth
> step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will
> conclude that the claimant is not disabled. 20 C.F.R. §
> 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past
> relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant
> work, the ALJ must determine the claimant's RFC using all relevant
> medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That
> is, the ALJ must determine if the claimant is limited to a particular
> work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the
> claimant's RFC and determines that the claimant cannot return to her
> prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[10] "To determine the physical exertion requirements of different types of
employment in the national economy, the Commissioner classifies jobs as sedentary,
light, medium, heavy, and very heavy. These terms are all defined in the
regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d
at 1239 n.4. *See also* 20 C.F.R. § 404.1567

[11] "A vocational expert is an expert on the kinds of jobs an individual can perform

relevant work. (Doc. 11-2, PageID.84). Nevertheless, the ALJ proceeded to Step Five and, after applying the Medical Vocational Guidelines (often referred to as the "grids"),[12] made an alternative finding that there exist a significant number of other jobs in the national economy that Markem could perform given her RFC, age,

---

based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

[12]

> There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy. The first is by applying the Medical Vocational Guidelines.
>
> Social Security regulations currently contain a special section called the Medical Vocational Guidelines. 20 C.F.R. pt. 404 subpt. P, app. 2. The Medical Vocational Guidelines ("grids") provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments. The grids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."
>
> The other means by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy is by the use of a vocational expert…When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy.

*Phillips*, 357 F.3d at 1239–40.

education, and work experience.  (Doc. 11-2, PageID.84-85).  Accordingly, the ALJ found that Markem was not under a disability as defined by Social Security Act during the relevant adjudicatory period.  (Doc. 11-2, PageID.85-86).

## IV. *Analysis*

### A. Treating Physician's Medical Opinion

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)).  "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.  These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586

F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citation omitted). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[ ], or has provided[ ],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x. 589, 591 (11th Cir. 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "The opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d

at 1240-41) (internal citation omitted). Failure to clearly articulate the reasons for giving less weight to the opinion of a treating physician "constitutes reversible error." *Lewis*, 125 F.3d at 1440. "But if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) (citing *Moore*, 405 F.3d at 1212). *Accord Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished). [13]

Markem claims the ALJ reversibly erred in assigning little weight to the medical opinions of her treating physician Dr. Judy Travis, but the undersigned is unconvinced. The ALJ's decision thoroughly discussed both Dr. Travis's objective notes and medical opinions and articulated a number of specific reasons why the ALJ gave Dr. Travis's opinions little weight, only some of which Markem addresses. First, Markem claims that the ALJ improperly required that Dr. Travis's opinions be supported by x-rays or other medical imagining. Relatedly, she also argues that the ALJ failed in her duty to develop a full and fair record by not ordering the imaging she purportedly required.

However, these arguments are premised on a couple of sentences from the ALJ's decision at Step Two that Markem presents out of context. That context is set out below, with the sentences Markem relies on being reproduced in boldface:

---

[13] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical opinions. However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to Markem's present applications. *See* 20 C.F.R. § 404.1520c.

In 2016, the claimant alleged back and neck pain, but did not mention knees or hands. The doctor wrote that the claimant has 3+++ muscle spasms (without indicating where); generalized arthritic changes in hands and shoulders; and popping and grinding in the knees with decreased range of motion. **Other than the neck findings, none of the other observations were based on imaging.** In May 2017, Dr. Travis wrote in all capitals with regard to neck and back, the claimant has 2++ spasms with marked decrease of range of motion. It is at least somewhat interesting that the spasms were better than on November 2016. She also wrote that (8F3/4) both knees pop and grind. Yet, within the same report, following these capitalized statements, she said: "no swelling. Good muscle mass bilaterally. Full range of motion in all joints. All muscles functioning well."[14] These observations are completely inconsistent with one another. Range of motion loss was not mentioned in these records until late 2016. Back and knee imaging, when in the record, has been normal. **There has to be a medically determinable impairment to support the severe observations the doctor proposed, but there is none with the exception of neck x-rays.**

The claimant returned in May 2017, and at this point, while the doctor prescribed (12F7-9) range of motion impairment, 2+ spams [sic] was no longer observed with regard to the back. This symptom was now present only at the neck. This strongly demonstrated improvement with the medications she provided. Moreover, the knees were not mentioned in this visit. Because the neck was the only imaging that showed a medically determinable condition, the back spasm and other complaints appear attributable to soft tissue sprains or strains not expected to last 12 months, and which improved with treatment on each occasion.

(Doc. 11-2, PageID.72).

---

[14] In the report the ALJ notes here, Dr. Travis stated in full: "2++MUSCLE SPASMS WITH MARKED DECREASE ROM. BOTH KNEES POP AND GRIND WITH EXTENSION AND FLEXION WITH DECREASED ROM, OTHERWISE, No swelling. Good muscle mass bilaterally. Full range of motion of all joints. All muscles functioning well…" (Doc. 11-7, PageID.482). Markem claims the ALJ misrepresented Dr. Travis's report by omitting the word "OTHERWISE," but the undersigned does not find this omission to be material.

When read in context, it is reasonably apparent that the ALJ's statement about a lack of imaging, while perhaps not artfully worded, did not purport to impose a categorical rule that a medically determinable impairment must be substantiated by imaging. Rather, the ALJ was simply noting that Dr. Travis did not produce x-rays or other imaging to support her findings as to Markem's back, knee, and hand pain, in the course of finding that the other "medical signs" and "laboratory findings" in the record did not support finding those conditions to be "medically determinable impairments." *See* 20 C.F.R. § 404.1529(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). Moreover, even if the ALJ did impose an imaging requirement, her decision noted that other "[b]ack and knee imaging, when in the record, has been normal." (Doc. 11, PageID.72). Thus, because imaging was already in the record, she would not have been required to obtain more.

Markem also claims the ALJ misrepresented Dr. Travis's records by finding that the notation "needs disability" made throughout them "appears to be the reason why [Markem] presented to Dr. Travis, rather than for treatment[,]" and that those notations do "not appear to be the doctor's opinion." (Doc. 11-2, PageID.71-72). Markem claims that "[t]hose statements do not appear in the list of complaints or in the review of systems, indicating they do not represent complaints from Ms. Markem." (Doc. 14, PageID.575). The significance of those statements is

ambiguous at best. While the ALJ could reasonably have interpreted them as Markem sees them, the interpretation the ALJ did draw is also reasonable, and "[i]f the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001).

Finally, Markem points to other evidence in the record that could be interpreted as bolstering Dr. Taylor's opinion. However, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's, *Winschel*, 631 F.3d at 1178, and "even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi*, 386 F.3d at 1029. To a large extent, Markem argues that Dr. Taylor's opinion should have been accepted simply based on the fact that she has various impairments. "However, the mere existence of these impairments does not reveal the extent to which they limit h[is] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. As noted previously, the ALJ extensively discussed Dr. Taylor's opinion and her reasons for giving it little weight, and Markem fails to address at all substantial portions of the ALJ's reasoning. The ALJ's decision articulated sufficient good cause to reject Dr. Taylor's opinion, and Markem has given no persuasive reason to suggest that the ALJ's conclusions were either unreasonable or not supported by substantial evidence.

## B.      Severe Mental Impairments

Markem next argues that the ALJ reversibly erred in finding that her depression was not a severe impairment at Step Two.  Even if the ALJ did err in this regard, such error does not warrant reversal.  Eleventh Circuit case law recognizes that that the "severe impairment" determination at Step Two "acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  *See also Burgos v. Acting Comm'r of Soc. Sec.*, 705 F. App'x 794, 803 (11th Cir. 2017) (per curiam) (unpublished) ("Step two is satisfied when the claimant has any severe impairment. Because the ALJ concluded that Burgos's physical impairments were severe, any error regarding the assessment of whether his mental impairments were severe could not have affected the outcome of the ALJ's analysis at step two.").  Here, the ALJ determined that Markem had two severe physical impairments, and thus proceeded to the next steps of the sequential evaluation.  Thus, any error by the ALJ in finding that Markem's depression was non-severe was "harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered [Markem]'s mental impairment when assessing h[er] RFC, and reached conclusions about [Markem]'s mental capabilities supported by substantial evidence."  *Schink v.*

*Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019).[15] Markem does not

argue that the ALJ failed to do so; indeed, she acknowledges, and the ALJ's decision

adequately indicates, that the ALJ considered her depression at the later steps.

## C.    Simple Work

Markem next argues that the ALJ reversibly erred in failing to include a

limitation to simple work in the RFC.    In making this argument, however,

---

[15] *See also Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011) (per curiam) (unpublished) ("The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." (citing *Jamison*, 814 F.2d at 588; *Phillips*, 357 F.3d at 1238)); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("[S]tep two requires only a finding of 'at least one' severe impairment to continue on to the later steps. See Jamison, 814 F.2d at 588. Further, the regulations state that the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability. See 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ found multiple severe impairments and accordingly proceeded to step three of the evaluation. Based on our precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 513-14 (11th Cir. 2017) (per curiam) (unpublished) ("If the ALJ finds any severe impairment, she must proceed to the third step of the analysis. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ... In this case, any step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event."); *Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 914–15 (11th Cir. 2014) (per curiam) (unpublished) ("Although the ALJ found that Mr. Freeman's back pain was not a severe impairment, the record demonstrates that she considered and discussed these symptoms at subsequent steps of the sequential analysis. Accordingly, any error in failing to find that Mr. Freeman's lower back pain was severe was harmless because the symptoms were nonetheless considered in the subsequent steps of the ALJ's analysis.").

Markem's brief misquotes the ALJ's decision.  On the issue of a limitation to simple work, the ALJ stated: "I have … considered [Markem's] 2017 depression, mostly stemming from the loss of her spouse.  I have considered this mild psychological condition and in combination with physical complaints, have found the claimant should be limited to simple work, but the record shows that this has no last [sic] 12 months, and is not likely to.  If reduced to medium work, … she will be able to deal with a forty hour work week without engaging in excessive absences or off task behavior."  (See Doc. 11-2, PageID.76).  In partially quoting the second sentence of the foregoing portion of the ALJ's decision, Markem omits everything after "simple work," and even misleadingly includes a period after that phrase, instead of an ellipsis or some other indicator that she was omitting the remainder of the sentence. (*See* Doc. 14, PageID.581).  The ALJ indicated that she deliberately chose to omit a limitation to unskilled work from the RFC, (*see* Doc. 11-2, PageID.85 ("These unskilled jobs are appropriate for a person who requires a reduction to simple work, **a factor that I have not added to the above RFC**, but which might be appropriate for a period of less than 12 months, when considering bereavement." (emphasis added)), and Markem fails to address the ALJ's explanation for doing so.

Moreover, Markem only claims that a limitation to simple work would have precluded the ALJ's Step Four finding that she could perform past work.  However, the ALJ also proceeded to make an alternative Step Five determination that, based on the "grids," Markem could perform other work existing in significant numbers in the national economy.  In making this finding, the ALJ specifically note that those

jobs were "unskilled jobs … appropriate for a person who requires a reduction to simple work, a factor … not added to the above RFC, but which might be appropriate for a period of less than 12 months, when considering bereavement." (Doc. 11-2, PageID.85). As the Commissioner correctly notes, Markem fails to address the ALJ's alternative Step Five finding. Accordingly, no reversible error has been shown in the ALJ's omission of a limitation to simple work from the RFC.

## D. New Evidence to Appeals Council

Markem's final claim of reversible error is that the Appeals Council failed to consider new evidence presented to it – specifically, treatment records from West Alabama Mental Health Center dated September 20, 2017, through February 27, 2018. "With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process, including before the Appeals Council. The Appeals Council has the discretion not to review the ALJ's denial of benefits. But the Appeals Council must consider new, material, and chronologically relevant evidence that the claimant submits." *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (per curiam) (citations and quotations omitted). "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is subject to judicial review … [W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to our de novo review." *Id.* at 1320–21 (quotations omitted) "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."

*Ingram*, 496 F.3d at 1262. Moreover, effective January 17, 2017, the Social Security regulations also state that the Appeals Council will only consider new evidence if the claimant shows "good cause" for not submitting the evidence to the ALJ. *See* 20 C.F.R. § 404.970(b).

Here, the Appeals Council's denial of review did not acknowledge the new evidence, much less explain how it had considered the evidence. It is unclear from the record whether this was due to an oversight by the Appeals Council. Nevertheless, any failure by the Appeals Council to consider the new evidence was harmless. First, Markem acknowledges that the new medical records were all "dated prior to the ALJ's decision" (Doc. 14, PageID.581), but nothing in the record indicates that she attempted to show good cause to the Appeals Council for failing to timely submit those records to the ALJ. Absent such a showing, the Appeals Council was not required to consider them.

Second, Markem has failed to show that the new evidence was material – that is, she has failed to show that, if the new records were "accepted, there is a reasonable possibility that they would change the administrative result." *Washington*, 806 F.3d at 1321 (quotations omitted). Markem argues only that the new evidence supported (1) finding that Markem's depression was a severe impairment, and (2) the need to include a limitation to simple work in the RFC. However, as explained above, (1) the failure to find an addition severe impairment at Step Two was harmless error at most, and (2) the ALJ's alternative Step Five finding, which Markem has not substantively addressed, determined that the other

jobs Markem could perform were all unskilled, thus accommodating any limitation to simple work.

Markem has failed to show reversible error in either the ALJ's or the Appeals Council's decision. Accordingly, the Commissioner's final decision denying Markem's applications is due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Markem's December 18, 2015 applications for a period of disability, DIB, and WIB is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 23rd day of March 2020.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**